**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE**

Rosemary A. Gilroy

        v.                                    Civil No. 07-cv-074-JD

Ameriquest Mortgage Company, et al.[1]

**O R D E R**

Pro se plaintiff Rosemary A. Gilroy brings this diversity action against Ameriquest Mortgage Company ("Ameriquest") and AMC Mortgage Services, Inc. ("AMC"), alleging that defendants engaged in predatory lending activities in violation of New Hampshire state law (document no. 1).  The complaint is before me for preliminary review to determine, among other things, whether plaintiff has properly invoked the subject matter jurisdiction of this court.  See United States District Court of the District of New Hampshire Local Rules ("LR") 4.3(d)(1)(B)(I).  For the reasons stated below, I order the complaint served on the defendants.

---

[1]This court notes that Ameriquest is a defendant to five actions and six potential tag-along actions pending in seven district courts and alleging predatory lending practices by Ameriquest, or a related entity, in the solicitation and closing of residential mortgage transactions.  See In re Ameriquest Mortg. Co. Mortg. Lending Practices Litig., 408 F. Supp. 2d 1354 (J.P.M.L. 2005).

**Standard of Review**

In reviewing a pro se complaint, this court must construe
the pleading liberally.  See Ayala Serrano v. Gonzalez, 909 F.2d
8, 15 (1st Cir. 1990)(following Estelle v. Gamble, 429 U.S. 97,
106 (1976) and construing pro se pleadings liberally in favor of
that party).  At this preliminary stage of review, all factual
assertions made by plaintiff and inferences reasonably drawn
therefrom must be accepted as true.  See Aulson v. Blanchard, 83
F.3d 1, 3 (1st Cir. 1996)(explaining that all well-pleaded
factual averments, not bald assertions, must be accepted as
true).  This review ensures that pro se pleadings are given fair
and meaningful consideration.  See Eveland v. Director of CIA,
843 F.2d 46, 49 (1st Cir. 1988).  I apply this standard in
reviewing plaintiff's complaint.

**Background**

Plaintiff resides at 107 Ponemah Road, Unit 1, Amherst, New
Hampshire.  Ameriquest allegedly is a mortgage company located in
the State of Delaware with its principal place of business in
Orange, California, and AMC is a debt servicing corporation
located in the State of California with its principal place of
business in Orange, California.  This action arises out of

defendants' alleged predatory lending practices in connection with plaintiff's purchase and subsequent refinance of five commercial condominiums located at 107 Ponemah Road, Amherst, New Hampshire ("Units 1-5").  Plaintiff purchased the premises on March 1, 2000 with the intent of receiving rental income to support a $600,000 mortgage.  Subsequently, she converted Unit 1 from a commercial condominium to a residential condominium, where she has resided since May 1, 2000.  Unable to lease the remaining condominiums, plaintiff decided to convert them to residential condominiums.  She received zoning approval for the site plan review in March 2004.

In order to complete the conversion, plaintiff refinanced the premises with Ameriquest.  In July 2004, Ameriquest refinanced Units 1, 2 and 4 in the amount of $790,000, thereby increasing her mortgage in the amount of approximately $190,000.[2] Plaintiff repeatedly advised Ameriquest that she did not want to encumber her residence, Unit 1, and that she was unwilling and unable to repay the increased mortgage amount.  As a condition of the refinance, however, Ameriquest allegedly insisted on

---

[2]Without providing specific dates, plaintiff alleges that Ameriquest employed Advent Appraisal Company to appraise Units 1, 2 and 4 and provide quotes that exceeded the market value of the property.

3

including Unit 1 in the refinance and increasing plaintiff's mortgage amount.  By including Unit 1, Ameriquest allegedly charged her $15,000 in additional points and closing costs. Further, by refinancing three condominiums instead of two, Ameriquest allegedly forced plaintiff to incur an additional debt of approximately $65,000.  At all relevant times, Ameriquest allegedly knew that plaintiff's sole source of income was $697.00 per month (or $9,000 per year) in social security benefits and that her low income was insufficient to support the debt.

According to plaintiff, Ameriquest provided mortgages to her with the sole intention of foreclosing on her property and acquiring $500,000 that she had invested in the property prior to refinancing with Ameriquest.  From July 2004 through March 2007, plaintiff allegedly paid in interest to Ameriquest, or owed in arrears, the sum of $225,000.  She alleges that as a result of Ameriquest's predatory lending practices, she will lose $500,000 that she had invested in her property.  Plaintiff further alleges that Ameriquest increased her mortgage payments to an amount greater than that required to successfully complete the conversion of her property, thereby unnecessarily increasing her mortgage and interest payments.  According to plaintiff,

Ameriquest "repeated the same illegal actions in March 2005,"
when it again refinanced Unit 2 in the amount of $375,000,
thereby increasing her total indebtedness to $937,000.

When plaintiff contacted another mortgage company in 2005 to
refinance Units 3 and 5, the lender refused on the basis that the
units were encumbered and plaintiff was unable to provide clear
title.  Plaintiff then refinanced Units 3 and 5 with Ameriquest
in October 2005, at which point Ameriquest allegedly increased
her original mortgage of $600,000 to $1,114,000, an increase of
more than $500,000.  Because of Ameriquest's practices in
excessively financing plaintiff's property, she allegedly was
unable to obtain additional financing in 2006 and "lost equity
and cash in the approximate amount of $200,000 in carrying
costs."  As a result, plaintiff was unable to complete the
improvements required for an occupancy certificate and therefore
unable to sell the condominiums.  Because of Ameriquest's alleged
predatory lending practices, plaintiff is in danger of losing her
equity in her property, amounting to approximately $1,200,000.

Plaintiff now brings the instant complaint, alleging that
defendants' actions violate New Hampshire state law.  She alleges
the following theories of recovery: (1) fraud; (2) intentional

infliction of emotional distress; (3) unfair debt collection
practices; and (4) unfair and deceptive lending practices.[3]  She
seeks, among other things, $937,000 in damages, plus treble
damages and attorneys' fees and costs.  She also seeks
reimbursement or wavier of all arrears paid and/or owed to the
defendants.

**Discussion**

I.   Diversity Jurisdiction

    A party seeking relief in district court must at least plead
facts which bring the suit within the court's jurisdiction.  See
Fed. R. Civ. P. 8(a)(1)(requiring a plaintiff to set forth in the
complaint "a short and plain statement of the grounds upon which
the court's jurisdiction depends").  For the reasons stated
below, plaintiff has properly invoked diversity jurisdiction
pursuant to 28 U.S.C. § 1332.

    To establish diversity jurisdiction, a complaint must allege

---

[3]In addition, plaintiff broadly alleges that defendants
discriminated against her on the basis of marital status and age,
however, she fails to identify any federal or state law basis for
her claims (Count 2).  It is unclear whether she intends to
allege a violation of the Equal Credit Opportunity Act, 15 U.S.C.
§ 1691, et seq., making it unlawful for a creditor to
discriminate against any applicant, with respect to any aspect of
a credit transaction on the basis of race, color, religion,
national origin, sex or marital status, or age.

complete diversity of citizenship between plaintiff and
defendants as well as an amount in controversy in excess of
$75,000, exclusive of interests and costs.  See 28 U.S.C. § 1332.
See also Straughn v. Delta Air Lines, Inc., 170 F. Supp. 2d 133,
146 (D.N.H. 2000)(citations omitted).  "Diversity jurisdiction
exists only when there is complete diversity, that is, when no
plaintiff is a citizen of the same state as any defendant."
Gabriel v. Preble, 396 F.3d 10, 13 (1st Cir. 2005).  "For
diversity purposes, a corporation is a citizen of both the state
where it is incorporated and the 'State where it has its
principal place of business.'"  Diaz-Rodriguez v. Pep Boys Corp.,
410 F.3d 56, 58 (1st Cir. 2005)(citing 28 U.S.C. § 1332(a)).

     Here, plaintiff alleges that she is a resident of New
Hampshire.  She further alleges that Ameriquest is a Delaware
corporation with its principal place of business in Orange,
California, and AMC is a California corporation with its
principal place of business in Orange, California.  Accordingly,
she has alleged diversity of citizenship between the parties.
Plaintiff also alleges an amount in controversy in excess of
$937,000, therefore, the amount in controversy exceeds the
minimum required for diversity jurisdiction.  I conclude,
therefore, that plaintiff has pled diversity jurisdiction under

28 U.S.C. § 1332.

II.   <u>State Law Claims</u>

    A.   <u>Fraud</u>

Plaintiff alleges that Ameriquest and AMC's predatory lending practices constitute fraud under New Hampshire law (Count 1).  Defendants' actions allegedly caused, or will cause, her to lose $500,000 in cash that she had invested into her property prior to financing the property with Ameriquest in July 2004 (Count 4).  Plaintiff further alleges that as a result of defendants' actions, she is at risk of losing "hundreds of thousands of dollars of accumulated equity" that she accrued as a result of the condominium conversion.

To establish fraud under New Hampshire law, "a plaintiff must prove that the defendant made a representation with knowledge of its falsity or with conscious indifference to its truth with the intention to cause another to rely upon it." <u>Snierson v. Scruton</u>, 145 N.H. 73, 76, 761 A.2d 1046, 1049 (2000)(citations omitted).  A plaintiff must also establish justifiable reliance.  <u>Id.</u>  "A plaintiff cannot allege fraud in general terms, but must specifically allege the essential details of the fraud and the facts of the defendants' fraudulent conduct."  <u>Id.</u>

8

Here, the complaint alleges that Ameriquest committed fraud by:

- providing plaintiff with three mortgages on Units 1, 2 and 4 in July 2004 in the amount of $794,000;

- refinancing Unit 2 in March 2005, thereby increasing plaintiff's indebtedness to $949,000;

- refinancing Unit 2 as plaintiff's residence when she resided in Unit 1;

- completing plaintiff's mortgage application to falsely state her income as $9000 per month rather than $675 per month;

- subsequently refinancing plaintiff's two remaining unencumbered condominiums, Units 3 and 5, on or about October 2005, thereby increasing her original mortgage of $600,000 to $1,114,000, an increase of more than $500,000;

- providing the aforementioned mortgages to plaintiff while knowing that she lacked the requisite income to support the debt and lacked the experience to convert commercial property;

- financing plaintiff's premises, consisting of five condominiums, when Ameriquest's license permitted the company to mortgage properties with no more than three condominiums;

- illegally causing a cloud to appear on the title to plaintiff's premises when it financed her premises in July 2004 and March 2005;

- illegally encumbering plaintiff's premises, Units 1-5;

- employing Advent Appraisal Company to appraise plaintiff's property and provide fraudulent appraisals that were in excess of market value;

- causing plaintiff to rely of the fraudulent appraisals and preventing her from selling the condominiums at a time when market values were at an historic high; and

- charging plaintiff excessively high interest rates with regard to Unit 1, plaintiff's residence, when residential mortgage rates were at an historic low.

The complaint further alleges that AMC committed fraud by:

- placing plaintiff at risk of foreclosure by initially financing her premises as described above, subsequently refinancing Unit 2 and collecting escalated interest payments from her;

- escalating plaintiff's mortgage payments, thereby causing her to use the cash she had received from refinancing to pay AMC interest payments in order avoid going into arrears;

- causing plaintiff to pay AMC $150,000 in interest payments from July 2004 through February 2006;

- causing plaintiff to incur a debt of $340,000 in order to obtain only $64,000 in cash for purposes of completing the condominium conversions and improvements;

- financing plaintiff's premises, consisting of five condominiums, when AMC's license permitted the company to mortgage properties with no more than three condominiums;

- financing plaintiff's premises in July 2004 and March 2005, when Advent Appraisal Services informed AMC and Ameriquest that the premises were vacant;

- charging plaintiff excessive closing costs;

- providing mortgages to plaintiff with the sole intention of foreclosing on her property and obtaining $500,000 that she had invested in the property; and

- providing mortgages to plaintiff and obligating her to pay $7500 or nearly 100% in interest payments.

Based on the foregoing and accepting plaintiff's allegations as true, I conclude that she has alleged the elements of fraud under New Hampshire law by specifically alleging the essential details of the fraud and the facts surrounding defendants' alleged fraudulent actions.  In addition, plaintiff has alleged reasonable reliance on defendants' alleged misrepresentations. Accordingly, for purposes of preliminary review, I conclude that plaintiff has stated cognizable state law claims for fraud against Ameriquest and AMC.

B.   <u>Intentional Infliction of Emotional Distress</u>

Plaintiff alleges that Ameriquest intentionally inflicted emotional distress on her by subjecting her to predatory lending practices and causing her to experience emotional distress and related physical harm (Count 3).

"The New Hampshire Supreme Court has adopted the provisions of section 46 of the Restatement (Second) of Torts and recognized that 'one who by extreme and outrageous conduct intentionally causes severe emotional distress to another is subject to liability for that emotional distress.'"  <u>Amatucci v. Hamilton</u>, Civil No. 05-cv-259-SM, 2007 WL 1825177 at *6 (D.N.H. June 25,

2007)(quoting <u>Konefal v. Hollis/Brookline Coop. Sch. Dist.</u>, 143 N.H. 256, 260, 723 A.2d 30, 33 (1998)).  A plaintiff must "point to conduct on the part of the defendant that is 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'"  <u>Id.</u> (citing Restatement (Second) of Torts § 46, cmt.d.).

Here, plaintiff alleges that Ameriquest's predatory lending practices caused her to experience emotional and physical harm, including three strokes that required hospitalization, and related leg pain, an inability to walk, memory problems and high blood pressure.  To the extent she alleges that defendant's actions were extreme and outrageous and caused her emotional distress and related physical harm, I conclude that plaintiff has stated a cognizable state law claim against Ameriquest.

C.   <u>Unfair Collection Practices</u>

Plaintiff alleges that Ameriquest harassed her by repeatedly telephoning her to collect late mortgage payments (Count 5). Construed liberally, the complaint alleges a violation of New Hampshire's Unfair Collection Practices Act, RSA Ch. 358-C (1995 & Supp. 2006).

RSA-C:3, I(a) provides that "any debt collection or attempt

12

to collect a debt shall be deemed unfair, deceptive or
unreasonable" where the debt collector  "[c]ommunicates or
attempts to communicate with the debtor, orally or in writing" by
"causing a telephone to ring or engaging any person in telephone
conversation repeatedly or continuously or at unusual times or at
times to be inconvenient with the intent to abuse or harass any
person at the called number."

Here, plaintiff alleges that Ameriquest repeatedly harassed
her to collect late mortgage payments.  Construed liberally, the
complaint alleges that Ameriquest attempted to collect payments
in an unfair, deceptive and unreasonable manner.  For purposes of
preliminary review, I conclude that plaintiff has stated a
cognizable state law claim against Ameriquest based on unfair
debt collection practices.

D.   Unfair and Deceptive Lending Practices

Plaintiff alleges that Ameriquest and AMC engaged in a
pattern of unfair and deceptive practices in violation of the New
Hampshire Consumer Protection Act ("CPA"), N.H. Rev. Stat. Ann.
("RSA") Ch. 358-A (1995 & Supp. 2006) (Count 6 ).

"RSA 358-A:2 declares it 'unlawful for any person to use any
unfair method of competition or any unfair or deceptive act or
practice in the conduct of any trade or commerce in this state.'"

<u>Hughes v. DiSalvo</u>, 143 N.H. 576, 577, 729 A.2d 422, 424 (1999).

The CPA defines trade and commerce:

> "Trade" and "commerce" shall include the advertising,
> offering for sale, sale, or distribution of any services and
> any property, tangible or intangible, real, personal or
> mixed, and any other article, commodity, or thing of value
> wherever situate, and shall include any trade or commerce
> directly or indirectly affecting people of this state.

<u>Id</u>. "A practice is unfair if (1) it is 'within at least the

penumbra of some common-law, statutory, or other established

concept of unfairness,' (2) 'it is immoral, unethical,

oppressive, or unscrupulous,' or (3) it causes substantial injury

to consumers.'" <u>Chroniak v. Golden Inv. Corp.</u>, 983 F.2d 1140,

1146 (1st Cir. 1993).

Here, plaintiff alleges that Ameriquest and AMC violated the

CPA by engaging in predatory lending practices, as described more

fully above, when it mortgaged and refinanced her property.

Specifically, she alleges that defendants' actions were

"deceptive, willful, fraudulent, [in bad faith and used] unfair

and illegal practices against the plaintiff."  For purposes of

preliminary review, I conclude that plaintiff has stated

cognizable state law claims under the CPA against Ameriquest and

AMC.

**Conclusion**

For the reasons stated above, I conclude that plaintiff has invoked this court's subject matter jurisdiction.  Accordingly, I order the complaint to be served on defendants Ameriquest and AMC.  <u>See</u> LR 4.3(d)(1)(B)(iii).

As plaintiff has completed a summons form for each defendant, the Clerk's Office shall issue the summonses against the defendants and forward to the United States Marshal for the District of New Hampshire ("U.S. Marshal's Office") the summonses, copies of the complaint (document no. 1) and this order.  Upon receipt of the necessary documentation, the U.S. Marshal's Office shall effect service upon the defendants.  <u>See</u> <u>id.</u>; Fed. R. Civ. P. 4.(c)(2) and (h).

Defendants are instructed to answer or otherwise plead within twenty days of service.  <u>See</u> Fed. R. Civ. P. 12(a)(1)(A).

Plaintiff is instructed that all future pleadings, written motions, notices, or similar papers shall be served directly on the defendants by delivering or mailing the materials to them or

their attorney(s), pursuant to Fed. R. Civ. P. 5(b).

       **SO ORDERED.**

                                         _____
                                         James R. Muirhead
                                       United States Magistrate Judge

Date: July 23, 2007

cc:  Rosemary A. Gilroy, pro se