UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE


<u>Rosemary A. Gilroy</u>

   v.                                    Civil No. 07-cv-074-JD
                                           Opinion No. 2009 DNH 088

<u>Ameriquest Mortgage Company
and Ameriquest Mortgage Company
Mortgage Services, Inc.</u>


<u>O R D E R</u>

Proceeding pro se and in forma pauperis, Rosemary A. Gilroy brings a complaint against the defendants, Ameriquest Mortgage Company ("Ameriquest") and Ameriquest Mortgage Company Mortgage Services, Inc. ("AMC Services"), for violations of New Hampshire Revised Statutes Annotated ("RSA") 358-C:3, I(a). Specifically, Gilroy alleges that the defendants harassed her by repeatedly calling her at home regarding her delinquent mortgage payments.

The court held a bench trial on May 11, 2009. Each party submitted a set of proposed findings of fact and rulings of law before trial. At the close of the evidence, the defendants submitted a motion for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 52(c).[1] Both parties presented a

---

[1] Rule 52(c) provides: "If a party has been fully heard on an issue during a nonjury trial and the court finds against the party on that issue, the court may enter judgment against the

brief oral argument on the Rule 52(c) motion.  Gilroy subsequently filed a motion to object to the defendants' Rule 52(c) motion as well as an objection to the defendants' motion.  The court has considered these materials, the testimony and exhibits received at trial, and the parties' post-trial submissions, and makes the following findings of fact and rulings of law.  See Fed. R. Civ. P. 52(a).

## Findings of Fact & Rulings of Law

I. Liability

Gilroy brings suit alleging harassment in violation of RSA 358-C:3, I(a).  As the party asserting the harassment claim, Gilroy carries the burden of proving her claim by a preponderance of the evidence.  State v. Lavoie, 155 N.H. 477, 481 (2007) ("In a civil action the burden of proof is generally on the plaintiff to establish its case by a preponderance of the evidence [and] [a]bsent legislative direction to the contrary . . . the general civil burden of proof [applies].") (internal citation and quotation marks omitted).  The court, however, is "not compelled

---

party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.  The court may, however, decline to render any judgement until the close of evidence.  A judgment on partial findings must be supported by findings of fact and conclusions of law as required by Rule 52(a)."

to accept a plaintiff's testimony even if uncontradicted." Santana v. United States, 572 F.2d 331, 335 (1st Cir. 1977) ("The plaintiff has the burden of proof and the [court] may find that the testimony does not carry that burden."); see also Bouthiette v. Wiggin, 122 N.H. 774, 776 (1982).

  To succeed on her harassment claim, Gilroy must prove that: (1) the defendants, in an "attempt to collect a debt"; (2) orally communicated or attempted to orally communicate with her "by causing a telephone to ring[,] or engaging [her] in telephone conversation[s]"; (3) "repeatedly or continuously or at unusual times or at times known to be inconvenient"; (4) "with the intent to abuse, oppress or harass" her.  RSA 358-C:3, I(a).

  Gilroy presented the following evidence at trial.[2]  In March of 2000, Gilroy purchased five office condominium units in Amherst, New Hampshire.  She currently lives in one of the units (Unit 1), which she converted into a residential condominium. Unable to find renters for the other four units, Gilroy decided to convert them into residential units.  In order to finance the conversions, Gilroy mortgaged Units 1, 2, and 4, to Ameriquest in 2004.[3]  At the time Gilroy took out the mortgages, she knew that

---

  [2]The defendants did not produce evidence at trial.

  [3]The court previously noted, based on the parties' averments, that AMC Services acted as Ameriquest's debt servicing

she would not be able to make the monthly payments unless the units were rented out.  Gilroy was unable to rent the units.

By February of 2006, Gilroy had stopped making payments on the Ameriquest Mortgages.  Gilroy testified that she began receiving phone calls at this time from persons seeking to collect payment on the Ameriquest Mortgages.  She testified that the callers identified themselves as representatives of Ameriquest or AMC Services and stated that they were calling about her delinquent mortgage payments on her three Ameriquest mortgages.  The defendants objected at trial to Gilroy's testimony regarding the identity of the callers, arguing that it was inadmissible hearsay and that Gilroy failed to establish a proper foundation regarding the identification of the callers.  See Fed. R. Evid. 801(c), 901(a).[4]

---

corporation during the applicable time period.  See Order on Summary Judgment, document no. 82, at 1 n.1.  This was not contested by the parties.

[4] Federal Rule of Evidence 801(c) provides that hearsay is a statement, "other than one made by the declarant while testifying at trial or hearing, offered in evidence to prove the truth of the matter asserted."

Rule 901(a) provides that, "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims."  Thus, courts have recognized that the self-identification of a caller is inadmissible unless sufficiently

The court overruled the defendants' hearsay objection. Gilroy's testimony that the callers identified themselves as representatives of Ameriquest or AMC Services was admitted for the limited purpose of showing what Gilroy heard, i.e., that the callers identified themselves as representing Ameriquest or AMC Services. It was not admitted to establish the truth of the matter asserted, i.e., that the callers did actually work for, or represent, Ameriquest or AMC Services. This testimony was therefore not hearsay. See Fed. R. Evid. 801(c); United States v. Munoz, 36 F.3d 1229, 1233 (1st Cir. 1994) ("[A]n out-of-court statement is not hearsay if it is used only to show that the statement was made and that the listener heard the words uttered.").

Gilroy produced sufficient admissible evidence at trial to prove the identity of the callers. Gilroy testified that the phone number of the incoming call, which was displayed on her caller ID, was almost identical to the phone numbers which she had called on several prior occasions at which she had reached Ameriquest or AMC Services. She further testified that the only contacts she had in California were Ameriquest and AMC Services and that the same California numbers would appear on her caller

---

supported by additional evidence. See United States v. Khan, 53 F.3d 507, 516 (2d Cir. 1995).

identification each time the mortgage calls came in.  She testified that the callers would recite the account number on her mortgage, or otherwise identify one of the mortgages on Gilroy's three units, and ask why she had not made any payments.  Gilroy's daughter, Robin Benjamin, testified that during the phone conversations, which she witnessed up through approximately September of 2006, Gilroy would talk about overdue mortgage payments while on the phone with the callers, would often sound angry, and would tell the callers to stop calling.  Gilroy presented sufficient admissible evidence, therefore, to establish that the callers were the defendants or representatives of the defendants.  See United States v. Console, 13 F.3d 641, 661 (3d Cir. 1993) ("It is well settled that telephone calls may be authenticated by circumstantial evidence as well as by direct recognition of the person calling."); Fed. R. Evid. 901, Advisory Committee notes, example 4. ("[A] telephone conversation may be shown to have emanated from a particular person by virtue of its disclosing knowledge of facts known peculiarly to him.").

    Gilroy testified that she received up to three calls per night, up to three nights per week from February 2006 through February 2007 for a total of up to 468 calls.  Benjamin testified that she witnessed Gilroy receiving one to three calls per night, one to two nights per week, for a six month-period, for a total

of up to 156 calls. Although Gilroy did not present evidence of specific dates and times for the calls, RSA 358-C:3, I(a) does not require that a debtor prove specific dates and times. The testimonies of Gilroy and Benjamin were sufficiently credible to establish that Gilroy received, by a conservative estimate, approximately 200 calls from February of 2006 through February of 2007.

Gilroy claims that each of these calls violated RSA 358-C:3, I(a). There is a lack of New Hampshire case law interpreting RSA 358-C:3, I(a). The court, therefore, looks to the federal Fair Debt Collection Practices Act ("FDCPA") for guidance because it contains provisions similar to the New Hampshire law.[5] The relevant portion of the FDCPA provides that "[a] debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d. The FDCPA prohibits a

---

[5]Gilroy insists that the FDCPA also applies to her claim and that she is entitled to statutory damages under the FDCPA of $1,000 per violation. The court looks to relevant federal law only for guidance in interpreting and applying RSA 358-C:3, I(a). The court has held, in numerous orders, that Gilroy's complaint pled a harassment claim only under state law, and that therefore only RSA 358-C:3, I(a) applies in this case. The court directs Gilroy to those orders, which explain why her claim is limited to the state law. See Preliminary Review Order, doc. no. 4, at 12-13; Order on Summary Judgment, doc. no. 82, at 4; Procedural Order, doc. no. 91; Final Pretrial Order, doc. no. 105, at 1.

debt collector from "[c]ausing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number," id. at § 1692d(5), and from "communicat[ing] with a consumer in connection with the collection of any debt . . . at any unusual time or place or a time or place known or which should be known to be inconvenient to the consumer," id. § 1692c(a)(1).[6]

In interpreting the provisions of the FDCPA, courts have held that "[w]hether there is actionable harassment or annoyance turns not only on the volume of calls made, but also on the pattern of calls." Akalwadi v. Risk Mgmt. Alternatives, Inc., 336 F. Supp. 2d 492, 505 (D. Md. 2004); Joseph v. J.J. MacIntyre Cos., 238 F. Supp. 2d 1158, 1168 (N.D. Cal. 2002). For example, courts have found violations of § 1692d(5) where the defendant repeatedly telephoned the plaintiff after being told by the

---

[6]At trial, both parties addressed the time period outlined in 15 U.S.C. § 1692c(a)(1) which provides that "[i]n the absence of knowledge of circumstances to the contrary, a debt collector shall assume that the convenient time for communicating with a consumer is after 8 o'clock antimeridian and before 9 o'clock postmeridian, local time at the consumer's location." The New Hampshire law does not contain a similar provision and in any event, the court finds that the time period cited in this provision is inapplicable given that Gilroy notified the defendants that anytime after 8 p.m. was inconvenient for her because she goes to bed early.

plaintiff to stop calling, Chiverton v. Fed. Fin. Group, Inc., 399 F. Supp. 2d 96, 104 (D. Conn. 2005) and where the defendant made six calls to the plaintiff in twenty-four minutes, Kuhn v. Account Control Tech., 865 F. Supp. 1443, 1453 (D. Nev. 1994). In Sanchez v. Client Servs., 520 F. Supp. 2d 1149 (N.D. Cal. 2007), the court recognized that "the frequency and volume of . . . telephone calls [can] show that defendants intended to annoy, abuse and harass [the] plaintiff." Id. at 1161.

Intent may also be inferred by evidence that the debt collector continued to call the debtor after the debtor had asked not to be called and had repeatedly refused to pay the alleged debt, or during a time of day which the debtor had informed the debt collector was inconvenient. See Kerwin v. Remittance Assistance Corp., 559 F. Supp. 2d 1117, 1124 (D. Nev. 2008) ("Intent to annoy, abuse, or harass may be inferred from the frequency of phone calls [or] the substance of the phone calls . . . ."); Bingham v. Collection Bureau, Inc., 505 F. Supp. 864, 873 (D.N.D. 1981) (finding that call by collection agency immediately following a prior call could establish harassment); cf. In re Coffey's Case, 157 N.H. 156, 178 (2008) (recognizing that intent may be proven through sufficient circumstantial

evidence).[7] Further, at least one court has rejected a defendant's argument that the frequency of calls may be excused where the defendant is collecting on several separate debts, finding that "such a distinction [is not] apparent from the plain language of . . . 15 U.S.C. § 1692d(5)." Joseph, 238 F. Supp. 2d at 1169. Such limiting language is also absent from RSA 358-C:3, I(a).

Gilroy testified that she told the defendants to stop calling her, that the calls were upsetting her, and that she did not have the money to pay the mortgages. She also testified that the defendants repeatedly called her at home around 8 p.m. and sometimes as late as 9 p.m., after she had informed them that she often went to bed by 8 or 9 p.m. and that the evening calls were bothering her. Benjamin testified that she observed Gilroy become angry while on the phone with the callers and that she heard Gilroy tell the callers to stop calling. Gilroy further testified that on two occasions in July of 2006, the callers said

---

[7]The defendants cite to Bieber v. Associated Collection Servs., Inc., 631 F. Supp. 1410 (D. Kan. 1986) and argue that the FDCPA has been interpreted as prohibiting only oppressive and outrageous conduct. The court declines to apply this principle here. This case is not binding upon the court's interpretation and application of New Hampshire law. Moreover, this principle was espoused in response to an allegation that during a phone conversation, the defendant asked whether the plaintiffs had filed bankruptcy.

that Gilroy was a "liar" when she told them that she had declared bankruptcy and did not have an attorney representing her.[8]

The credible testimonies of Gilroy and Benjamin concerning the frequency, nature, and time of day of the calls constitute sufficient evidence permitting the court to infer the defendants' intent to "abuse, oppress or harass" Gilroy.  RSA 358-C:3, I(a). Once Gilroy told the defendants to stop calling her, that she could not pay the mortgages, and that their nighttime calls were bothering her, each of the 200 subsequent phone calls to Gilroy constituted a violation of RSA 358-C:3, I(a).  The defendants' intent to harass Gilroy is further evidenced by the two July calls in which the defendants called Gilroy a "liar."

For the foregoing reasons, the court holds that Gilroy has proven her claim of harassment under RSA 358-C:3, I(a).

II. Damages

Gilroy seeks statutory damages and all damages proximately caused by the violations of RSA 358-C:3, I(a).  RSA 358-C:4, I. The statute, however, only permits recovery for the greater of either "the sum of $200 plus costs and reasonable attorney's fees for each violation, or . . . [f]or all damages proximately caused

---

[8]The defendants did not object to this testimony.

by the violation." RSA 358-C:4, I. To prove the latter, Gilroy must show that the defendants' violations of RSA 358-C:3, I(a) were the proximate cause of her injuries. See Carignan v. New Hampshire Int'l Speedway, 151 N.H. 409, 414 (2004). "[T]o establish proximate cause, the plaintiff must prove that the defendant's conduct caused or contributed to cause the harm." Id.

Gilroy claims that the defendants' actions affected her health and concentration, and prevented her from refinancing the units, which in turn caused her to go further into default and become unable to pay her property taxes. Gilroy's injuries, however, are due to her lack of income. It is undisputed that Gilroy did not have the income to pay the Ameriquest mortgages before the calls began in February of 2006 because she could not rent the units. There is no evidence that the defendants' phone calls caused or contributed to Gilroy's inability to obtain an income and pay the mortgages and property taxes. Therefore, Gilroy has failed to establish proximate cause and may not recover damages under RSA 358-C:4, I(b).

Gilroy is, however, entitled to statutory damages of $200 for each violation of RSA 358-C:3, I(a) by the defendants. RSA 358-C:4, I(a). As the court found above, based upon Gilroy's and Benjamin's credible testimonies, the court conservatively

estimates that the defendants made 200 calls in violation of RSA 358-C:3, I(a).  See Fed. R. Civ. P. 52.  The statute specifies damages of $200 per violation, which yields a total of $40,000 in statutory damages.  See RSA 358-C:4, I(a).

## Conclusion

Based on the foregoing findings and rulings, the court orders judgment for Gilroy in the amount of $40,000.  Any other requests for findings of fact or rulings of law submitted by the parties and not expressly or implicitly granted in the body of this opinion are hereby denied.  The defendants' motion for judgment on partial findings (document no. 127) is granted as to damages proximately caused and is otherwise denied, and Gilroy's motion to object (document no. 129) is terminated as moot.  The clerk shall enter judgment accordingly and close the case.

SO ORDERED.

                                          _/s/ Joseph A. DiClerico, Jr._
                                          Joseph A. DiClerico, Jr.
                                          United States District Judge

June 17, 2009

cc:  Rosemary A. Gilroy, pro se
     Thomas C. Tretter, Esquire

13